IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

ANTHONY EMIL MATTHEISS,
    Petitioner,

vs.                                                Case No.:  3:14cv143/LAC/EMT

JULIE L. JONES,
    Respondent.
_____/

## REPORT AND RECOMMENDATION

      This cause is before the court on Petitioner's petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 (doc. 1).  Respondent filed a motion to dismiss the petition as untimely (doc. 17).  Petitioner responded in opposition to the motion, contending he was entitled to equitable tolling of the federal limitations period, based upon attorney abandonment (doc. 22).  The court issued an order directing Respondent to respond to Petitioner's equitable tolling argument (doc. 24).  The court alternatively permitted Respondent to withdraw its motion to dismiss and address the merits of Petitioner's habeas claims (*id.*).  In response to the order, Respondent filed an answer addressing the merits of Petitioner's claims (doc. 25).  Petitioner filed a reply (doc. 29).

      The case was referred to the undersigned for the issuance of all preliminary orders and any recommendations to the district court regarding dispositive matters.  *See* N.D. Fla. Loc. R. 72.2(B); *see also* 28 U.S.C. § 636(b)(1)(B), (C) and Fed. R. Civ. P. 72(b).  After careful consideration of all issues raised by Petitioner, it is the opinion of the undersigned that no evidentiary hearing is required for the disposition of this matter, Rules Governing Section 2254 Cases 8(a).  It is further the opinion of the undersigned that the pleadings and attachments before the court show that Petitioner is not entitled to relief.

I.   BACKGROUND AND PROCEDURAL HISTORY

The relevant aspects of the procedural background of this case are established by the state court record (*see* doc. 25).[1]  Petitioner was charged in the Circuit Court in and for Escambia County, Florida, Case No. 2007-CF-3246, with one count of DUI manslaughter (Count 1), one count of vehicular homicide (Count 2), three counts of DUI with damage to property or person without serious injury (Counts 3, 5, and 6), and one count of DUI with serious bodily injury (Count 4) (Ex. A at 3–4).  On December 28, 2007, Petitioner signed a written plea agreement and sentence recommendation, pursuant to which the parties agreed to the following:  (1) the State would dismiss the vehicular homicide count (Count 2); (2) Petitioner would plead guilty as charged to the remaining counts, and (3) Petitioner's sentence would not exceed twenty years (*id.* at 11–14).  The trial court accepted the plea, and the State announced a nolle prosequi as to Count 2 (Ex. I at 68–78).  On April 4, 2008, the court adjudicated Petitioner guilty of Counts 1 and 3–6, and sentenced him to concurrent terms of 183.2 months of imprisonment on Counts 1 and 4, with pre-sentence jail credit of 274 days, and time served on Counts 3, 5, and 6 (Ex. A at 16–66, 102–08).

Petitioner filed a notice of appeal to the Florida First District Court of Appeal ("First DCA"), Case No. 1D08-2257 (Ex. A at 112).  Petitioner's counsel filed a brief, pursuant to Anders v. California, 386 U.S. 738 (1967), asserting that there were no meritorious arguments to support the contention that reversible error occurred in the trial court (Exs. B, C).  The appellate court provided Petitioner an opportunity to file a pro se initial brief (Ex. D).  The First DCA affirmed the judgment per curiam without written opinion on March 26, 2009, with the mandate issuing April 21, 2009 (Exs. E, F).  Mattheiss v. State, 6 So. 3d 58 (Fla. 1st DCA 2009) (Table).  Petitioner did not seek further review.

On June 16, 2009, Petitioner filed, through counsel, a motion for modification of sentence, pursuant to Rule 3.800(c) of the Florida Rules of Criminal Procedure (Ex. G).  The state circuit court summarily denied the motion on June 23, 2009 (Ex. H).

---

[1] Hereinafter all citations to the state court record refer to the exhibits submitted with Respondent's answer (doc. 25).  If a cited page has more than one page number, the court cites to the "Bates stamp" page number.

Case No.:  3:14cv143/LAC/EMT

On April 26, 2011, Petitioner filed, through counsel, a motion for post-conviction relief, pursuant to Rule 3.850 of the Florida Rules of Criminal Procedure (Ex. I at 1–5). The state circuit court initially dismissed the motion as untimely (*id.* at 8–10), but subsequently determined that an exception to the time limit may apply and thus ordered the State to show cause why the court should not accept the Rule 3.850 motion as timely filed (*id.* at 16–17). The State conceded that the motion was timely (*id.* at 22). Petitioner filed a pro se motion to discharge post-conviction counsel and represent himself without counsel (*id.* at 23–27). On January 9, 2012, the court struck the Rule 3.850 motion as facially insufficient, without prejudice to Petitioner's filing an amended motion within 120 days (*id.* at 27–28). Petitioner filed a timely amended motion on March 8, 2012 (*id.* at 30–36). The state circuit court summarily denied it on June 11, 2012 (*id.* at 37–40). Petitioner appealed the decision to the First DCA, Case No. 1D12-5714 (Ex. J). The First DCA affirmed the judgment per curiam without written opinion on February 15, 2013, with the mandate issuing April 15, 2013 (Exs. L, O). Matheiss v. State, 109 So. 3d 786 (Fla. 1st DCA 2013) (Table).

Petitioner filed the instant federal habeas action on March 23, 2014 (doc. 1).

II.   STANDARD OF REVIEW

Section 2254(a) of Title 28 provides that "a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court" upon a showing that his custody is in violation of the Constitution or laws of the United States. As the instant petition was filed after April 24, 1996, it is subject to the more deferential standard for habeas review of state court decisions under § 2254 as brought about by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA). Pub.L. 104-132, § 104, 110 Stat. 1214, 1218–19. In relevant part, section 2254(d) now provides:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C.A. § 2254 (2002).

The United States Supreme Court explained the framework for § 2254 review in Williams v. Taylor, 529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000).[2]  The appropriate test was described by Justice O'Connor as follows:

> In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court.  Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied—the state court adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States."  Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Id.*, 529 U.S. at 412–13 (O'Connor, J., concurring); Ramdass v. Angelone, 530 U.S. 156, 120 S. Ct. 2113, 2119–20, 147 L. Ed. 2d 125 (2000).  In employing this test, the Supreme Court has instructed that on any issue raised in a federal habeas petition upon which there has been an adjudication on the merits in a formal State court proceeding, the federal court should first ascertain the "clearly established Federal law," namely, "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision."  Lockyer v. Andrade, 538 U.S. 63, 71–72, 123 S. Ct. 1166, 155 L. Ed. 2d 144 (2003).  The law is "clearly established" if Supreme Court precedent at the time "would have compelled a particular result in the case."  Neelley v. Nagle, 138 F.3d 917, 923 (11th Cir. 1998), *overruled on other grounds by* Parker v. Head, 244 F.3d 813, 835 (11th Cir. 2001).

---

[2] Unless otherwise noted, references to Williams are to the majority holding, written by Justice Stevens for the Court (joined by Justices O'Connor, Kennedy, Souter, Ginsburg, and Breyer) in parts I, III, and IV of the opinion (529 U.S. at 367–75, 390–99); and Justice O'Connor for the Court (joined by Justices Rehnquist, Kennedy, Thomas, and—except as to the footnote—Scalia) in part II (529 U.S. at 403–13).  The opinion of Justice Stevens in Part II was joined by Justices Souter, Ginsburg, and Breyer.

Case No.:  3:14cv143/LAC/EMT

Next, the court must determine whether the State court adjudication is contrary to the clearly established Supreme Court case law, either because "'the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases' or because 'the state court confronts a set of facts that are materially indistinguishable from a decision of th[e] [Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent.'" Lockyer, 538 U.S. at 73 (quoting Williams, 529 U.S. at 405–06). The Supreme Court has clarified that "[a]voiding these pitfalls does not require citation to our cases—indeed, it does not even require awareness of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." Early v. Packer, 537 U.S. 3, 8, 123 S. Ct. 362, 365, 154 L. Ed. 2d 263 (2002) (quoting Williams, 529 U.S. at 405–06). If the State court decision is found in either respect to be contrary, the district court must independently consider the merits of the petitioner's claim. Moreover, where there is no Supreme Court precedent on point, the state court's conclusion cannot be contrary to clearly established federal law. See Henderson v. Campbell, 353 F.3d 880, 890 n. 15 (11th Cir. 2003).

If on the other hand, the State court applied the correct Supreme Court precedent and the facts of the Supreme Court cases and the petitioner's case are not materially indistinguishable, the court must go to the third step and determine whether the State court "unreasonably applied" the governing legal principles set forth in the Supreme Court's cases. The standard for an unreasonable application inquiry is "whether the state court's application of clearly established federal law was objectively unreasonable." Williams, 529 U.S. at 409. Whether a State court's decision was an unreasonable application of a legal principle must be assessed in light of the record the court had before it. Holland v. Jackson, 542 U.S. 649, 652, 124 S. Ct. 2736, 2737–38, 159 L. Ed. 2d 683 (2004) (per curiam); cf. Bell v. Cone, 535 U.S. 685, 697 n.4, 122 S. Ct. 1843, 1851 n.4, 152 L. Ed. 2d 914 (2002) (declining to consider evidence not presented to state court in determining whether its decision was contrary to federal law). An objectively unreasonable application of federal law occurs when the State court "identifies the correct legal rule from Supreme Court case law but unreasonably applies that rule to the facts of the petitioner's case" or "unreasonably extends, or unreasonably declines to extend, a legal principle from Supreme Court case law to a new context." Putman v. Head, 268 F.3d 1223, 1241 (11th Cir. 2001). "In determining whether a state court's decision represents an unreasonable application of clearly established federal law, a federal court

conducting habeas review 'may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.'" Gill v. Mecusker, 633 F.3d 1272, 1287 (11th Cir. 2011) (quoting Williams, 529 U.S. at 411) (citing Harrington v. Richter, 562 U.S. 86, 103, 131 S. Ct. 770, 178 L. Ed. 2d 624 (2011)). The AEDPA's "unreasonable application" standard focuses on the state court's ultimate conclusion, not the reasoning that led to it. *See* Gill, *supra* at 1291 (citing Harrington). Under § 2254(d), a habeas court must determine what arguments or theories supported or could have supported the state court's decision, and then ask whether it is possible that fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of the Supreme Court. *See* Harrington, 562 U.S. at 102; *see also* Gill, *supra,* at 1292 (the federal district court may rely on grounds other than those articulated by the state court in determining that habeas relief was not warranted, so long as the district court did not err in concluding that the state court's rejection of the petitioner's claims was neither an unreasonable application of a Supreme Court holding nor an unreasonable determination of the facts).

Section 2254(d) also allows federal habeas relief for a claim adjudicated on the merits in State court where that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The Supreme Court has clarified that: "a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." Miller-El v. Cockrell, 537 U.S. 322, 340, 123 S. Ct. 1029, 1041, 154 L. Ed. 2d 931 (2003) (dictum).

When performing its review under § 2254(d), the federal court must bear in mind that any "determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *see, e.g.,* Miller-El, 537 U.S. at 340 (explaining that a federal court can disagree with a state court's factual finding and, when guided by AEDPA, "conclude the decision was unreasonable or that the factual premise was incorrect by clear and convincing evidence"); Jones v. Walker, 469 F.3d 1216, 1226–27 (11th Cir. 2007) (holding that § 2254(d)(2)'s

"unreasonable determination" standard "must be met by clear and convincing evidence," and concluding that that standard was satisfied where prisoner showed "clearly and convincingly" that the state court's decision "contain[ed] an 'unreasonable determination' of fact."). The "unreasonable determination of the facts" standard is only implicated to the extent that the validity of the state court's ultimate conclusion is premised on unreasonable fact finding. *See* Gill, 633 F.3d at 1292. A petitioner is not entitled to relief unless he demonstrates by clear and convincing evidence that the record reflects an insufficient factual basis for affirming the state court's decision. *Id.*

Only if the federal habeas court finds that the petitioner satisfied AEDPA, and § 2254(d), does the court take the final step of conducting an independent review of the merits of the petitioner's claims. *See* Panetti v. Quarterman, 531 U.S. 930, 953, 127 S. Ct. 2842, 2858, 168 L. Ed. 2d 662 (2007); Jones, 469 F.3d 1216 (same). The writ will not issue unless the petitioner shows that he is in custody "in violation of the Constitution or laws and treaties of the United States." 28 U.S.C. § 2254(a).

Within this framework, the court will review Petitioner's claims.

III.   PETITIONER'S CLAIMS

> A.   Ground One: "Defendant was denied his Sixth Amendment right to effective assistance of counsel based upon the affirmative misadvice of counsel prior to entering a plea."

Petitioner alleges that prior to entering his guilty plea, and after a lengthy discussion with counsel, he decided to enter a guilty plea based upon the following: (1) the State would dismiss Counts 2, 7, and 8, (2) his maximum sentence exposure would be reduced from 40 years to 20 years, and (3) the judge would have mercy on him (doc. 1 at 5–7). Petitioner alleges he entered a guilty plea to Counts 1, 3, 4, 5, and 6 (*id.*). He alleges prior to entering his plea, defense counsel failed to advise him that double jeopardy principles precluded his convictions on Count 1 and Count 2 (*id.*). He alleges if counsel had advised him that he could not be convicted of both Counts 1 and 2, he would have rejected the State's plea offer and gone to trial (*id.*). Petitioner asserts he raised this claim in his amended Rule 3.850 motion (*id.* at 7–8).

Respondent concedes that Petitioner presented this claim in his amended Rule 3.850 motion, and that the state court adjudicated the merits of the claim (*see* doc. 25 at 9). Respondent contends the state court's adjudication was not based upon an unreasonable determination of the facts, nor was is contrary to or an unreasonable application of clearly established federal law (*id.* at 8–12).

        1.        Clearly Established Federal Law

A defendant's Sixth Amendment right to counsel extends to the plea-bargaining process. Lafler v. Cooper, — U.S. —, 132 S. Ct. 1376, 1384, 182 L. Ed. 2d 398 (2012) (citing Missouri v. Frye, — U.S. —, 132 S. Ct. 1399, 1404, — L. Ed. 2d — (2012), and McMann v. Richardson, 397 U.S. 759, 771, 90 S. Ct. 1441, 25 L. Ed. 2d 763 (1970)). The two-part test articulated in Strickland v. Washington, 466 U.S. 668 (1984) applies to claims that counsel was ineffective during the plea process. *See* Lafler, 132 S. Ct. at 1384 (applying Strickland's two-part test to federal habeas petitioner's claim that counsel was ineffective for advising him to reject a plea offer); Frye, 132 S. Ct. at 1404, 1409–10 (applying Strickland's two-part test to federal habeas petitioner's claim that counsel was ineffective for failing to communicate a prosecution plea offer before it lapsed); Hill v. Lockhart, 474 U.S. 52, 48, 106 S. Ct. 366, 88 L. Ed. 2d 203 (1985) (applying Strickland's two-part test to defendant's challenge to his guilty plea based on ineffective assistance of counsel).

Strickland's first prong requires a defendant to show "'that counsel's representation fell below an objective standard of reasonableness.'" Hill, 474 U.S. at 57 (quoting Strickland, 466 U.S. at 688). The focus of inquiry under the performance prong of the Strickland standard is whether counsel's assistance was "reasonable considering all the circumstances." Strickland, 466 U.S. at 691. The Supreme Court warned about second-guessing professional judgments made by counsel:

> [T]he decision to plead guilty before the evidence is in frequently involves the making of difficult judgments. All the pertinent facts normally cannot be known unless witnesses are examined and cross-examined in court. Even then the truth will often be in dispute. In the face of unavoidable uncertainty, the defendant and his counsel must make their best judgment as to the weight of the State's case. Counsel must predict how the facts, as he understands them, would be viewed by a court . . . . Questions like these cannot be answered with certitude; yet a decision to plead guilty must necessarily rest upon counsel's answers, uncertain as they may be. Waiving trial entails the inherent risk that the good-faith evaluations of a reasonably competent attorney will turn out to be mistaken either as to the facts or as to what a court's judgment might be on given facts. That a guilty plea must be intelligently

made is not a requirement that all advice offered by the defendant's lawyer withstand retrospective examination in a post-conviction hearing.

McMann, 397 U.S. at 769–70.

In a plea situation, counsel must provide advice "within the range of competence demanded of attorneys in criminal cases." Hill, 474 U.S. at 56–57 (quoting McMann, 397 U.S. at 771). Under this standard, representation is ineffective only if counsel commits "serious derelictions" of his duty when advising the accused. Stano v. Dugger, 921 F.2d 1125, 1150–51 (11th Cir. 1991). Absent such blatant errors, however, the court should "indulge a strong presumption that counsel's conduct fell within the wide range of reasonably professional assistance." Yordan v. Dugger, 909 F.2d 474, 477 (11th Cir. 1990). The Eleventh Circuit has commented that "[t]he right to competent plea bargain advice is at best a privilege that confers no certain benefit," because a defendant "may make a wise decision" without assistance of counsel or a "bad one despite superior advice from his lawyer." Wofford v. Wainwright, 748 F.2d 1505, 1508 (11th Cir. 1984) (per curiam). "[C]ounsel owes a lesser duty to a client who pleads guilty than to one who decides to go to trial, and in the former case counsel need only provide his client with an understanding of the law in relation to the facts, so that the accused may make an informed and conscious choice between [entering a plea] and going to trial." Id. This requires counsel to "offer his informed opinion as to the best course to be followed" and impart "a general knowledge of the possible legal consequences of facing trial" to the defendant. Id. Therefore, a defendant's failure to "correctly assess every relevant factor entering into his decision" does not undermine a validly entered guilty plea. Id. at 1509.

Strickland's second prong requires a defendant to show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. In the context of pleas, "[t]he . . . 'prejudice' requirement . . . focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process." Hill, 474 U.S. at 59.

When a district court considers a habeas petition, the state court's findings of historical facts in the course of evaluating an ineffectiveness claim are subject to the presumption of correctness, while the performance and prejudice components are mixed questions of law and fact. Strickland, 466 U.S. at 698; Collier v. Turpin, 177 F.3d 1184, 1197 (11th Cir. 1999). "Surmounting

Strickland's high bar is never an easy task." Padilla v. Kentucky, 559 U.S. 356, 371, 130 S. Ct. 1473, 176 L. Ed. 2d 284 (2010). "Establishing that a state court's application of Strickland was unreasonable under § 2254(d) is all the more difficult." Richter, 131 S. Ct. at 788. As the Richter Court explained:

> The standards created by Strickland and § 2254(d) are both "highly deferential," and when the two apply in tandem, review is "doubly" so. The Strickland standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under Strickland with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard.

*Id.* (citations omitted).

        2.        Federal Review of State Court Decision

Petitioner raised this claim as Claim One in his amended Rule 3.850 motion (Ex. I at 32–33). In the state circuit court's written decision denying the claim, the court correctly stated the deficient performance and prejudice prongs of the Strickland standard as the applicable legal standard (*id.* at 38–39). The court adjudicated the claim as follows:

> In his first claim, Defendant asserts that he was not advised by his counsel that he could not be convicted and sentenced for both DUI manslaughter and vehicular homicide based on the death of one victim, and that had he known that, he would have rejected the plea offer and insisted on going to trial.
>
> Defendant's claim is refuted by the record. It is clear that Defendant was aware that he could not be convicted for both counts of DUI manslaughter and vehicular homicide. The sentence recommendation reflects a handwritten notation that count two (vehicular homicide) merged with count 1 (DUI manslaughter).[FN 6] Defendant acknowledged that he had gone over the sentence recommendation and that he understood all of its terms and conditions.[FN 7] Furthermore, the assistant state attorney stated clearly in open court, in the presence of Defendant, in discussing counts 1 and 2, "[Y]ou cannot be convicted and sentenced on both of those," and the Court acknowledged this statement as accurate, saying "Yeah, no, and I am aware of that."[FN 8]. Defendant is not entitled to relief on this basis.
>
> [FN 6:  See Attachment 1.]
>
> [FN 7:  See Attachment 4, plea hearing transcript, page 6.]

[FN 8:  <u>See</u> Attachment 4, plea hearing transcript, pages 4–5.]

(Ex. I at 39–40).  Petitioner appealed the decision to the First DCA, and the appellate court affirmed the lower court's decision without written opinion (Ex. L).

The record supports the state court's finding that the written plea agreement/sentence recommendation stated that the State would "N[olle] P[rosequi]" Count 2, because it "merges" with Count 1 (Ex. I at 43).  Petitioner signed the written plea agreement/sentence recommendation acknowledging that he read it and understood its terms (*id.* at 46).  Additionally, the transcript of the plea hearing confirms that prior to Petitioner's entering his plea, and in Petitioner's presence, the prosecutor announced that Count 2 would be dismissed, because it was duplicitous of Count 1; the prosecutor clearly stated, "you cannot be convicted and sentenced on both of those" (*id.* at 71–72).  Based on the record, the state court reasonably determined that at the time Petitioner entered his plea, he was aware that he could not be convicted and sentenced for both DUI manslaughter (Count 1) and vehicular homicide (Count 2) based upon the death of one victim.  Therefore, his plea was not the result of ineffective assistance of counsel.

Petitioner failed to establish that the state court's adjudication of his claim was based upon an unreasonable determination of the facts, or that is was contrary to or an unreasonable application of clearly established federal law.  Therefore, he is not entitled to federal habeas relief on Ground One.

   B. <u>Ground Two:  "Defendant was denied his Sixth Amendment right to effective assistance of counsel when counsel failed to seek a downward departure for the defendant."</u>

Petitioner asserts he met the statutory requirements to receive a downward departure sentence based upon the mitigating factors that the offense was committed in an unsophisticated manner, the offense was an isolated incident, and he was remorseful (doc. 1 at 9–10).  He argues defense counsel was deficient for failing to seek a downward departure based upon these factors (*id.*).  He contends if counsel had sought a downward departure, he would have received a sentence less than 183.2 months in prison (*id.*).

Respondent concedes that Petitioner presented this claim in his amended Rule 3.850 motion, and that the state court adjudicated the merits of the claim (*see* doc. 25 at 13).  Respondent contends

the state court's adjudication was not based upon an unreasonable determination of the facts, nor was is contrary to or an unreasonable application of clearly established federal law (*id.*).

       1.       Clearly Established Federal Law

The Strickland standard, set forth *supra*, governs this claim.

       2.       Federal Review of State Court Decision

Petitioner raised this claim as Claim Two in his amended Rule 3.850 motion (Ex. I at 34–35). The state circuit court adjudicated the claim as follows:

> In his second claim, Defendant asserts that his counsel was ineffective for failing to seek a downward departure sentence. Defendant claims that "he met all the requirements to receive a downward departure but counsel did not pursue one." This claim is also refuted by the record. A review of the sentencing proceedings reveals that counsel argued ably (if unsuccessfully) on Defendant's behalf in an attempt to garner a downward departure sentence.[FN 9] Defendant has failed to demonstrate that his counsel performed deficiently or that he was prejudiced. He is not entitled to relief on the basis of this claim.
>
> [FN 9: See Attachment 5, sentencing transcripts hearing excerpts.]

(Ex. I at 53–54). Petitioner appealed the decision to the First DCA, and the appellate court affirmed the lower court's decision without written opinion (Ex. L).

The transcript of the sentencing hearing demonstrates that defense counsel sought a downward departure sentence based upon the factors identified by Petitioner, specifically, that the offense was committed in an unsophisticated manner and was an isolated incident for which Petitioner showed great remorse (*see* Ex. A at 24–33, 53–55). Defense counsel additionally argued that the need for restitution to one of the victims outweighed the need to incarcerate Petitioner (*id.*). Petitioner himself testified how extremely remorseful he was, as did his wife (*id.* at 33–40). Defense counsel presented numerous letters from Petitioner's supporters (*see id.* at 23–24, 78–98). Prior to announcing Petitioner's sentence, the court explained its sentencing decision:

> I agree with the statements that were made by both Mr. Molchan [the prosecutor] and by Mr. Ratchford [defense counsel]. This is all too familiar. And as, and I think it was Ms. Jones, I think, it was Mr. Stanton's [the deceased victim's] granddaughter [sic], every time one of these cases comes up, we hope and pray that the message is sent. That the message is received, that this behavior, this bad judgement does nothing but leave families in shambles.

Case No.: 3:14cv143/LAC/EMT

>    And it doesn't seem to be working because we are here again. And, unfortunately, we [will] probably continue to be here.
>
>    I do agree with Mr. Ratchford's statement that the tragedy is just great because you've got people that are not caught up in the legal system in the sense that we understand it that are now very much caught up in the legal system. And so I just cannot say enough that this is a tragedy beyond proportion for all of the families.
>
>    I sincerely extend my sympathies to the Stanton family for the loss that they have had to endure. I also extend my sympathies to the Cooper family. While Mr. Cooper certainly is here and we are grateful that he is here, he also has medical difficulties that he's going to have to endure into the future.
>
>    So at this point in time, I have to look and see what is an appropriate sentence and there are obviously things to be taken into consideration. Mr. Ratchford has argued them all.
>
>    Mr. Mattheis [sic], I have no doubt, is remorseful. And he did take full responsibility and did plead guilty to these charges.
>
>    On the other hand, the families have made it clear to me that they believe that incarceration would be appropriate. And they believe that a substantial amount of incarceration is appropriate. And the Stanton family is not asking for restitution and the Cooper family has just made it very clear that they do not believe that that would be an appropriate basis for a downward departure.
>
>    So and I understand that Mr. Mattheis [sic] has said that he will accept whatever sentence is rendered today. And after watching him, I believe that he truly means that because I do believe that he is remorseful and understands that his conduct has consequences. And that is what I intend to do.

(Ex. A at 59–61). The court then imposed the 183.2-month prison sentence (*id.* at 61–62).

The record refutes Petitioner's assertion that defense counsel failed to seek a downward departure sentence based upon the factors that the offense was committed in an unsophisticated manner, the offense was an isolated incident, and Petitioner was remorseful. Defense counsel made those arguments, and the sentencing court considered them but determined that a prison term of 183.2 months was an appropriate consequence for Petitioner's conduct.

Petitioner failed to establish that the state court's adjudication of his claim was based upon an unreasonable determination of the facts, or that is was contrary to or an unreasonable application of Strickland.  Therefore, he is not entitled to relief on Ground Two.

As a final matter, Petitioner raises new arguments in his reply (doc. 29).  He asserts law enforcement took photographs of the crime scene, but the photographs were missing from the records he reviewed within months of his conviction (*id.* at 2).  Petitioner asserts that the photographs, when viewed with the diagrams of the crash scene which he attached to his reply, conclusively show that the automobile in which the victim was the passenger ("Vehicle 2") actually caused the crash (*id.* at 2–4).  Petitioner asserts the photographs and diagram show that Vehicle 2 made an illegal u-turn into Petitioner's lane (*id.*).  Petitioner also asserts there is no evidence to prove he was traveling over the speed limit when he hit Vehicle 2 (*id.*).

Petitioner asserts several claims with respect to the photographs.  He claims that the State withheld the photographs, in violation of Brady v. Maryland, 373 U.S. 83 (1963) (doc. 29 at 2–4).  He also claims that defense counsel failed to investigate the photographs, and erred in advising him to plead guilty to DUI manslaughter, where there was evidence demonstrating he did not cause the crash (*id.*).  Petitioner also asserts that the photographs demonstrate he is actually innocent of DUI manslaughter (*id.*).  Petitioner states he raised these arguments in a footnote of his amended Rule 3.850 motion (*id.* at 4).

The record shows that in a footnote to Claim One of Petitioner's amended Rule 3.850 motion, he stated:

> The defendant has always believed that he had a defense to the charge of DUI Manslaughter when it comes to the element of causation.  There is evidence that the driver of the victim's car was drinking prior to the accident but was never tested.  Additionally, the victim's car was the one that executed a U-Turn and pulled in front of the defendant's car.  The question remains:  was the defendant impaired so that he could not react to the victim's negligence?

(Ex. I at 33).  Petitioner made this statement in support of his claim that he was prejudiced by defense counsel's failure to advise him that he could not be convicted of both DUI manslaughter (Count 1) and vehicular homicide (Count 2), because by pleading guilty, he waived any possible defenses (*id.*).

Case No.:  3:14cv143/LAC/EMT

To the extent Petitioner now attempts to amend his federal petition to include a Brady claim and a claim of ineffective assistance of counsel based upon counsel's failure to investigate the case and failure to advise Petitioner of a viable defense, Petitioner did not fairly present any of these arguments to the state courts. Petitioner did not argue either a factual or legal basis for a Brady claim in his amended rule 3.850 motion (*see* Ex. I at 30–36). Further, he did not assert that defense counsel failed to adequately investigate the case, or that counsel failed to advise him of a viable defense; instead he merely asserted his belief that he had a viable defense in support of his argument that he was prejudiced by a different alleged error of defense counsel (i.e., failure to advise him that he could not be convicted of both Counts 1 and 2). Therefore, Petitioner did not exhaust these new claims in the state courts.[3] *See* Duncan v. Henry, 513 U.S. 364, 365–66, 115 S. Ct. 887, 130 L. Ed. 2d 865 (1995) (to satisfy the exhaustion requirement of 28 U.S.C. § 2254(b)(1), the petitioner must "fairly present" his claim in each appropriate state court, alerting that court to the federal nature of the claim); O'Sullivan v. Boerckel, 526 U.S. 838, 845, 119 S. Ct. 1728, 144 L. Ed. 2d 1 (1999); Picard v. Connor, 404 U.S. 270, 277–78, 92 S. Ct. 509, 30 L. Ed. 2d 438 (1971).

Additionally, Petitioner's claims are without merit. By signing the plea agreement/sentence recommendation, Petitioner agreed that the probable cause affidavit, which was part of the record filed with the clerk of court, set forth a factual basis for his plea (*see* Ex. A at 5–15). At Petitioner's sentencing hearing, the defense did not dispute the circumstances of the crash as described in the Presentence Investigation Report, which was a verbatim repetition of the facts set forth in the probable cause affidavit (*see id.*). The probable cause affidavit stated that Vehicle 2 (the vehicle in which the manslaughter victim was a passenger) had made a u-turn from southbound State Road 95 (U.S. Highway 29), and was traveling northbound in the outside lane when Petitioner's car, a white Mercedes SLK350 ("Vehicle 1"), struck the rear left of the vehicle. The probable cause affidavit stated that Officer Davis photographed and marked the "post crash evidence" on the scene. It was

---

[3] Respondent did not address these new claims in its answer (and thus did not assert a procedural defense), because Petitioner did not assert them in his § 2254 petition and instead raised them for the first time in his reply. In its answer, Respondent expressly stated, "**Respondent asserts all available procedural bars.**" (doc. 25 at 1). The federal habeas statutes provides, "A State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement." 28 U.S.C. § 2254(b)(3).

Case No.: 3:14cv143/LAC/EMT

determined that Vehicle 2 had made a u-turn and traveled a minimum of 78 feet north before Petitioner struck the vehicle. Approximately two hours after the crash, Trooper Timothy Hendrix obtained a voluntary blood sample from Petitioner at a local hospital. Trooper Tucker read Petitioner his Miranda rights, and Petitioner requested an attorney. Petitioner's wife then began asking the officers questions about what they needed to do, and Officer Davis explained that she needed to ask the attorney. Petitioner stated, "All we can do is pray for no manslaughter charges." Petitioner also stated that a car pulled out in front of him, and he was only driving 87 miles per hour and tried to avoid the other vehicle. Officer Davis reminded Mattheisses that they had requested to speak with an attorney, and he and Trooper Tucker left the hospital. Officer Davis interviewed Eddie Evans, the driver of Vehicle 2, and he stated that did not see a vehicle coming, so he made the u-turn and was driving north in the outside lane when he was struck in the back. Officer Davis subsequently interviewed Ms. Marti Kay Kaemmerer. She stated that she was traveling northbound on U.S. Highway 29, when a small white car "came out of nowhere" from behind her. She stated that the vehicle "flew by her" quickly and was out of sight, traveling at "a high rate of speed." Ms. Kaemmerer stated she came upon the crash a few minutes later, and recognized the white car as the same car that sped by her. Officer Davis also interviewed Ms. Kathleen Fryman, who stated that the small, white car almost struck her from the rear as she was driving north on Highway 29. She stated the white vehicle lost control, driving into the center median of U.S. Highway 29, and then the vehicle recovered. She stated she watched it "go down the hill quickly" and saw the headlights of Vehicle 2 as it made the u-turn. Mrs. Fryman stated that Vehicle 2 had "plenty of room" to make the u-turn if the white vehicle had not been traveling so fast. Petitioner's blood sample was analyzed by the Florida Department of Law Enforcement, and test results showed 0.166 grams of ethyl alcohol per 100 milliliters of blood. The minimum speed computed for Petitioner's vehicle at the time of the crash was 95 miles per hour, and the posted speed limit in the zone of the crash was 65 miles per hour.

Initially, Petitioner failed to demonstrate a Brady violation. In Brady, the Supreme Court held: "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." 373 U.S. at 87. The evidence is material "if there is a

reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." United States v. Bagley, 473 U.S. 667, 682, 105 S. Ct. 3375, 87 L. Ed. 2d 481 (1985); *see also* Kyles v. Whitley, 514 U.S. 419, 433–34, 115 S. Ct. 1555, 131 L. Ed. 2d 490 (1995).

Here, Petitioner failed to show that the prosecution suppressed the crash scene photographs. The existence of the photographs was clearly disclosed in the probable cause affidavit, which was filed with the court on July 3, 2007, less than two months after the crash and several months prior to Petitioner's entering the plea agreement/sentence recommendation with the State (Ex. A, Progress Docket Printout; Ex. A at 5–10). Therefore, the existence of the photographs was not withheld from the defense. The fact that the photographs were not part of the "record" received by Petitioner after his conviction does not suggest that they were not available to the defense prior to Petitioner's plea. Therefore, Petitioner failed to demonstrate a Brady violation.

Additionally, Petitioner failed to demonstrate he was prejudiced by defense counsel's alleged failure to investigate the photographs and advise him that the photographs supported a viable defense, namely, that the State would be unable to prove the causation element of DUI manslaughter. The DUI statute in effect at the time of Petitioner's offense conduct (May of 2007) provided, in pertinent part:

> (1) A person is guilty of the offense of driving under the influence . . . if the person is driving or in actual physical control of a vehicle within this state and:
>
> (a) The person is under the influence of alcoholic beverages, any chemical substance set forth in s. 877.111, or any substance controlled under chapter 893, when affected to the extent that the person's normal faculties are impaired;
>
> (b) The person has a blood-alcohol level of 0.08 or more grams of alcohol per 100 milliliters of blood; or
>
> (c) The person has a breath-alcohol level of 0.08 or more grams of alcohol per 210 liters of breath.
> . . . .
> (3) Any person:
> (a) Who is in violation of subsection (1);
> (b) Who operates a vehicle; and
> (c) Who, by reason of such operation, causes or contributes to causing:

>. . . .
>3. The death of any human being . . . commits DUI manslaughter . . . .

Fla Stat. § 316.193. The DUI manslaughter statute includes the element of causation, but it does not require the State to prove negligence on the part of the defendant, nor does it require the State to prove that the conduct of the defendant was the sole cause. *See* State v. Hubbard, 751 So. 2d 552, 564 (Fla. 1999) (emphasis added).

In a vehicular homicide prosecution, evidence of the conduct of the decedent or the decedent's driver is relevant only if the conduct was the sole proximate cause of the accident that caused the decedent's death. *See* Filmon v. State, 336 So. 2d 586, 591 (Fla. 1976) (emphasis added); Keller v. State, 849 So. 2d 385, 387 (Fla. 2d DCA 2003); Brimmer v. State, 541 So. 2d 1307, 1308 (Fla. 4th DCA 1989).

Regarding the issue of the legality of the u-turn, Florida law provides:

> The driver of any vehicle shall not turn the vehicle so as to proceed in the opposite direction upon any street unless such movement can be made in safety and without interfering with other traffic and unless such movement is not prohibited by posted traffic control signs. A violation of this section is a noncriminal traffic infraction, punishable as a moving violation as provided in chapter 318.

Fla. Stat. § 316.1515.

Here, Petitioner has not submitted any evidence, let alone reliable evidence, supporting his bald assertion that the crash scene photographs would have shown that Mr. Evans's u-turn was the sole proximate cause of the accident. In the absence of a showing that further investigation would have produced reliable evidence of a viable defense, Petitioner failed to demonstrate that defense counsel's failure to investigate the photographs and failure to advise Petitioner of a viable lack-of-causation defense was unreasonable. Petitioner's failure to show that the photographs supported a viable defense also pulls the rug out from under his prejudice argument.

In sum, Petitioner failed to exhaust the new claims he raised in his reply, specifically, a Brady violation with respect to the crash scene photographs, and an ineffective assistance of counsel claim based upon defense counsel's failure to investigate the photographs and to advise Petitioner

that the photographs supported a viable defense of lack of causation. Moreover, those claims are without merit. Therefore, Petitioner is not entitled to federal habeas relief on these claims.[4]

IV. CERTIFICATE OF APPEALABILITY

As amended effective December 1, 2009, § 2254 Rule 11(a) provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. Rule 11(b), Rules Governing Section 2254 Cases.

The undersigned finds no substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2); Slack v. McDaniel, 529 U.S. 473, 483–84, 120 S. Ct. 1595, 1603–04, 146 L. Ed. 2d 542 (2000) (explaining how to satisfy this showing) (citation omitted). Therefore, the undersigned recommends that the district court deny a certificate of appealability in its final order.

The second sentence of new Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." Thus, if there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

Accordingly, it is respectfully **RECOMMENDED**:

1. That the petition for writ of habeas corpus (doc. 1) be **DENIED**.
2. That a certificate of appealability be **DENIED**.

At Pensacola, Florida, this 23rd day of June 2015.

/s/ *Elizabeth M. Timothy*
**ELIZABETH M. TIMOTHY**
**CHIEF UNITED STATES MAGISTRATE JUDGE**

---

[4] In light of the conclusion that Petitioner is not entitled to federal habeas relief on any of his claims, the undersigned will not address and implies no view about Respondent's asserted statute of limitations defense.

Case No.: 3:14cv143/LAC/EMT

## NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control</u>.  A copy of objections shall be served upon all other parties.  If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.  *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.**